UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RACHEL V. STANTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:13-cv-00403-TWP-MJD |
| ) | |
| CAROLYN W. COLVIN Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Rachel V. Stanton ("Ms. Stanton") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Act. For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

### I. BACKGROUND

**A. Procedural History**

On June 23, 2010 Ms. Stanton protectively filed an application for SSI alleging a disability onset date of October 1, 2009. Ms. Stanton's application was denied initially on October 11, 2010, and upon reconsideration on December 20, 2010. After her request for reconsideration was denied, Ms. Stanton filed a written request for a hearing on February 24, 2011. A video hearing was scheduled for Ms. Stanton on October 27, 2011, before Administrative Law Judge Julia D. Gibbs (the "ALJ"). Ms. Stanton was represented by an attorney at the hearing. On November 10, 2011, the ALJ denied Ms. Stanton's application. On January 24, 2013, the Appeals Council denied Ms. Stanton's request for review of the ALJ's decision. The ALJ's decision is the final decision of the Commissioner for purposes of judicial

review. Ms. Stanton filed this civil action, pursuant to 42 U.S.C. 405(g), for review of the ALJ's decision.

B.  **Factual Background**

At the time of her alleged onset date of October 2009, Ms. Stanton was 30 years old and had a high school education. Prior to the alleged onset date of her disability, she had past relevant work as a cashier and a warehouse worker. Ms. Stanton lives with her mother. She alleges problems with depression, bipolar disorder, disc herniation, spondylosis, and shoulder pain. The ALJ found that Ms. Stanton had not engaged in substantial gainful activity since June 23, 2010, the date of her SSI application.

Ms. Stanton suffers from both mental and physical impairments. The record indicates that she has a history of problems with her back, including documentation of a July 2008 surgery to repair a herniated disc at the L4-5 level. R. at 218. She has had ongoing pain in her back since that time. Her medical records further reveal that Dr. Neil Zlatinski performed an MRI in March 2010, which showed a large disc herniation. R. at 249. On Dr. Zlatinski's recommendation, Ms. Stanton underwent an examination by Dr. Todd Eads ("Dr. Eads") who observed that she was suffering from progressive back pain. However, Dr. Eads also noted that she had not undergone much treatment for her back, so he recommended a conservative approach including physical therapy and Neurontin. R. at 28. After her evaluation by Dr. Eads in July 2010, Ms. Stanton's records reveal a gap in her medical treatment until she met with Dr. Kristen Davis ("Dr. Davis") in August 2011. R. at 29. Dr. Davis treated Ms. Stanton for depression, and noted some issues with Ms. Stanton's back, but did not provide any treatment for her back pain. Finally, Ms. Stanton underwent a consultative examination with Dr. Katherine Brooks, who assessed Ms. Stanton's range of motion, noted her complaints of pain, and reported

that Ms. Stanton should "avoid significant bending, stooping, lifting, crouching, kneeling, or crawling." R. at 29.

In addition to her back pain, Ms. Stanton suffers from depression and bipolar disorder. She was initially diagnosed with depression by Dr. Terri Pellow ("Dr. Pellow") at Midtown Community Mental Health ("Midtown") in February 2010. R. at 226. Dr. Pellow later revised that diagnosis to bipolar disorder. R. at 234. Dr. Pellow's bipolar diagnosis was corroborated by Dr. Stephen Dunlop, one of Dr. Pellow's colleagues at Midtown. R. at 240. However, consultative examiner Dr. Mark Dobbs concluded that Ms. Stanton suffered from major depression due to her medical condition consisting of chronic back pain. R. at 264. He also gave Ms. Stanton a score of 49 on the global assessment of functioning, which indicated that she suffered from serious symptoms as a result of her mental impairments. R. at 266. During her treatment at Midtown for her mental health issues, she was prescribed medication to control her depression and bipolar disorder and attended group therapy sessions. However, she ceased treatment at Midtown in May 2010. In August 2011, Dr. Davis began prescribing Ms. Stanton medication to treat her depression.

## II. DISABILITY AND STANDARD OF REVIEW

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e. one that significantly limits her ability to perform basic work activities) that meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly

pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 797 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3ed 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

The ALJ applied the five-step evaluation the Commissioner has adopted to determine whether an individual has a disability within the meaning of the Act. At step one, the ALJ found that Ms. Stanton had not engaged in substantial gainful activity since June 23, 2010. At step two, the ALJ found that Ms. Stanton had the following severe impairments: depression, bipolar disorder, disc herniation, and spondylosis. The ALJ also explained that although the diagnoses in the record did not list anxiety as an impairment, she considered anxiety along with depression and bipolar disorder when she determined Ms. Stanton's severe impairments. At step three, the ALJ found that Ms. Stanton did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Ms. Stanton had the residual functional capacity to perform sedentary work and is limited to unskilled work. The ALJ also found that Ms. Stanton could not perform more than occasional bending, stooping, crouching, or crawling and required a sit/stand option. In addition, the ALJ also noted that Ms. Stanton must avoid face-

to-face interaction with the general public and should not have any more than superficial contact with coworkers and supervisors. At step four, the ALJ determined that Ms. Stanton is unable to perform any of her past relevant work. At step five, the ALJ found that considering Ms. Stanton's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform; consequently, Ms. Stanton is not disabled for purposes of the Social Security Act ("the Act") from her alleged onset date through the date of the ALJ's decision.

## IV. DISCUSSION

Ms. Stanton raises three issues on appeal that she claims constitute reversible error. First she argues that the ALJ failed to ask her treating physician for clarification as to her recommended physical limitations. Second, she argues that the ALJ failed to satisfy step three of the sequential evaluation process by failing to consider whether Ms. Stanton's alleged physical impairments were covered under listings 1.02 or 1.04. Third, Ms. Stanton argues that the ALJ failed to articulate her application of Social Security Ruling ("SSR") 96-7p when she assessed Ms. Stanton's symptoms.

### A.    The ALJ correctly evaluated the medical source opinion.

Ms. Stanton contends that *Barnett v. Barnhart*, 381 F.3d 664, 669-670 (7th Cir. 2004) requires the ALJ to solicit additional medical records to clarify disputed issues. The Government argues that the ALJ did not have to recontact the treating physician for clarification because "there was no objective support for the limitation" that Dr. Davis placed on Ms. Stanton. Def. Br. at 4. The Government cites 20 C.F.R. § 416.912, which places the burden of proof on the claimant to prove that she is disabled. The Government cites to Ms. Stanton's treatment history which shows that Dr. Davis had generally observed that Ms. Stanton was in good health. The

ALJ explained that she could not determine whether Dr. Davis' statement was "a subjective complaint or medical recommendation." R. at 29. The ALJ also explained that "[Dr. Davis] did not otherwise treat the claimant's back impairments in any significant way." R. at 29.

The ALJ has a duty to develop the medical record in the case by requesting evidence from the claimant's medical sources. *See* 20 C.F.R. § 404.1512(d); 20 C.F.R. § 416.912(d). If the ALJ is unable to properly evaluate the medical evidence in the record she can employ a range of measures to assist her comprehension; to that end, the ALJ can request additional records, recontact the treating physician, or order a consultative examination. *See* 20.C.F.R § 404.1527(c)(1)-(6); 20 C.F.R. § 404.1512(e). "An ALJ need[s] [to] recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(e)). In *Barnett v. Barnhart*, the court explained that if an ALJ is not able to evaluate a medical opinion, she should solicit additional medical evidence so that she can make an accurate evaluation of a doctor's findings. 381 F.3d 664, 669-670 (7th Cir. 2004). Nevertheless, the claimant still bears the burden of developing her case. *See* 20 C.F.R. § 404.1512; 20 C.F.R. § 406.912.

In her brief, Ms. Stanton cites to 20 C.F.R. §§ 404.1512(e) and 406.912 in support of her position that the ALJ should have recontacted Dr. Davis, a treating physician, for clarification of the limitation for "no lifting, prolonged sitting, or standing" that Dr. Davis noted regarding Ms. Stanton. R. at 284. Those regulatory sections deal with situations where a consultative examination might be necessary because of a doctor's inability to "provide certain tests or procedures" rather than when an ALJ should recontact a treating physician. 20 C.F.R. 1512(e). Although the ALJ noted that Dr. Davis' records were unclear as to whether the notes regarding Ms. Stanton's restrictions were subjective complaints or medical recommendations, that was not

7

the only basis for the ALJ finding that Dr. Davis' opinion regarding Ms. Stanton's physical limitations was entitled to no weight. In addition, the ALJ noted that Dr. Davis had not treated Ms. Stanton for "[her] back impairments in any significant way" and noted that Ms. Stanton went to Dr. Davis with reports that she needed treatment for depressive symptoms. R. at 29. The ALJ also discussed evidence from consultative examiner Dr. Brooks indicating that Ms. Stanton had "no obvious limitations." R. at 29. Ms. Stanton argues that the disputed observation in Dr. Davis' report was "an admittedly unclarified treating physician statement" but she does not offer citations to the record for why the ALJ's reasoning on this issue was in error. Therefore, the Court concludes that the ALJ did not commit reversible error when she failed to contact Dr. Davis for clarification of the statement made in the medical report.

**B.     The ALJ satisfied step three of the sequential evaluation process.**

Next, Ms. Stanton contends that the ALJ should have discussed her physical impairments under listings 1.02(joints) or 1.04(spine). She observes that the ALJ limited her discussion on these impairments to "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment." R. at 25. Ms. Stanton argues that the decision in *Taylor v. Barnhart*, 189 Fed. Appx. 557, 561 (7th Cir. 2006) supports her conclusion that the ALJ should have specifically mentioned the relevant listings, 1.02 and 1.04, when assessing her physical impairments. The Government contends that the ALJ committed harmless error when she failed to consider listings 1.02 and 1.04.

    **1.     The ALJ did not have to consider Listing 1.02**

The listing of impairments describes impairments for each of the major body systems considered to be severe enough to prevent a claimant from doing any gainful activity. Listing

The Government accurately points out that Ms. Stanton's complaint of shoulder pain occurred prior to her alleged disability onset date. The regulations indicate that the Commissioner has to develop the claimant's medical history twelve months back from the filing date unless the claimant says the disability began less than twelve months before filing an application. 20 C.F.R. §§ 404.1512(d); 406.9129(d). These regulations discuss the Commissioner's obligation to assist the claimant in developing the medical record within the regulatory time frame rather than setting out guidance for the specific medical reports the Commissioner must review when determining whether a particular impairment meets a listing.

Even though the ALJ did not mention the report of shoulder pain, which was only documented in the medical records once on August 17, 2009, the ALJ did not necessarily have to consult that report because the evidence as a whole does not support the conclusion that Ms. Stanton had a history of shoulder pain. R. at 212. Unlike her back pain, which is well-documented, Ms. Stanton's shoulder pain appears to have been an isolated instance, and the ALJ's failure to reference this was not necessary because it was not supported by any other evidence in the record from the relevant time period, and because the ALJ did not find this to be a severe impairment at step 2. Ms. Stanton does not address any other evidence in the record supporting her argument that her shoulder pain should have been considered a severe impairment, or that it met the requirements for Listing 1.02. Therefore, the Court concludes that the ALJ did not commit reversible error by failing to mention Listing 1.02.

### 2. Failure to specifically mention Listing 1.04 was not reversible error.

The Government argues that the ALJ's omission of Listing 1.04 is harmless error that would have led to the same result on remand because the record as a whole supports the inference that Ms. Stanton would not have been able to meet the requirements of that listing.

Ms. Stanton argues that because the ALJ found that she suffered from "disc herniation and spondylosis" the ALJ should have provided a more detailed explanation for why she did not meet Listing 1.04.

When the ALJ decides whether a particular impairment qualifies under a listing, the ALJ "must discuss the listing by name and offer more than a perfunctory analysis." *Barnett*, 381 F.3d at 668. The ALJ must determine disability "based on one of the agency's listed impairments." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2003); *see also Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (emphasizing that the ALJ "should mention specific listings"). Even though the ALJ must mention the specific listing from the listed impairments, "the claimant bears the burden of proving his condition meets or equals a listed impairment." *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).

Ms. Stanton states correctly that the ALJ failed to reference any specific physical impairment in her explanation. She argues that the absence of specific reasons leaves a reviewing court to guess at the reasons why the ALJ did not find that Ms. Stanton's impairments may have qualified under Listing 1.04. Ms. Stanton asserts that the ALJ concluded she suffered from "disc herniations and spondylosis[,]" which she marshals in support of her contention that the ALJ should have mentioned Listing 1.04. However, in her opinion, the ALJ justified her reasoning for not listing impairment. Specifically, the ALJ stated that "[n]o treating or examining physician has mentioned findings equivalent to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment." R. at 25. Moreover, elsewhere in her opinion, the ALJ discusses evidence that Ms. Stanton had full strength, intact sensation, and did not exhibit an antalgic gait. R. at 28. While the ALJ did not explicitly mention Listing 1.04, she made reference to symptoms that are taken

into consideration when determining whether a claimant meets Listing 1.04, which shows that the ALJ did consider the requirements of the listing. *See* 20 C.F.R. § 404 app. 1, § 1.04(A) (Listing 1.04 requires "limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)").

Likewise, Ms. Stanton does not point to specific evidence in the record that explains why she meets the requirements of Listing 1.04, nor does she explain how the evidence cited by the ALJ is inconsistent with her conclusion that Ms. Stanton does not have any medical conditions that meet any of the listed impairments. Remand is not warranted to simply have the ALJ explicitly mention a listing by number where the evidence discussed otherwise shows that the outcome would be the same. *See Spiva v. Astrue*, 628 F.3d 346 (7th Cir. 2010) ("If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time."). Therefore, the Court concludes that the ALJ did not commit reversible error when she failed to mention explicitly Listing 1.04.

**C.  Substantial evidence supports the ALJ's credibility determination.**

For her final issue**,** Ms. Stanton contends that the ALJ did not provide specific reasons for why she was not credible. She urges the Court to conclude that the ALJ did not apply the factors outlined in SSR 96-7p and instead made unlawful assumptions and inferences about her condition. In contract, the Government contends the evidence as a whole supports the ALJ's credibility finding.

The ALJ applies a two-step process to arrive at a credibility determination. SSR 96-7p requires the ALJ to determine whether there is a medically determinable impairment which could reasonably be expected to produce the pain or other symptoms alleged, and second, the ALJ must evaluate the intensity and persistence of the symptoms and determine the extent to which the symptoms limit the claimant's capacity for work. If the claimant's symptoms are not substantiated by objective medical evidence, the ALJ makes a finding on the credibility of the claimant's statements based on the record as a whole. *See* SSR 96-7p; 20 C.F.R. § 404.1529(c)(4). To assess the credibility of the individual's statements, the ALJ must review the claimant's daily activities, the location, duration, frequency and intensity of the claimant's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effect of any medication the claimant takes to alleviate the symptoms; any measures other than treatment the claimant uses or has used to relieve symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to symptoms. SSR 96-7p; 20 C.F.R. § 404.1529(c)(3).

Reviewing courts generally provide great deference to an ALJ's credibility determination. Courts will defer to an ALJ's credibility determination unless the determination is "patently wrong." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2010). The court does not undertake "a *de novo* review of the medical evidence" but instead "examine[s] whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Seventh Circuit cautions an ALJ from relying on "meaningless boilerplate" recitations that a claimant's testimony is not credible. *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). If the ALJ does not explain the reasons supporting a credibility determination a court will reverse the ALJ's credibility determination. *Elder*, 529 F.3d at 413.

The ALJ observed that "the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual, even when considering her limited access to care." R. at 28. During the hearing testimony, the ALJ asked Ms. Stanton about the gaps in her medical treatment, which seems to have at least partially formed the basis for this statement as to Ms. Stanton's credibility. The ALJ prefaced her credibility discussion by noting that she considered evidence bearing on credibility according to the requirements of SSR 96-7p. As *Bjornson* pointed out, when an ALJ does not explain the reasons supporting a credibility determination a court will reverse the credibility determination. However, that rationale is not evident on these facts. The ALJ reviewed the medical evidence at length in her opinion. R. at 28-30. To manage her back pain, the ALJ observed that Dr. Zlatinski, one of Ms. Stanton's doctors, prescribed her pain medication. R. at 28. Another doctor, Dr. Eads, recommended conservative treatment, and even considering the gap in treatment, the ALJ noted that when Ms. Stanton returned to Dr. Zlatinski, who had referred her to Dr. Eads, she did not report back pain. R. at 29. The ALJ also noted that Ms. Stanton was able "to wash laundry" and "to do activities such as sweeping, mopping, vacuuming, cooking, and shopping in short intervals." R. at 29. As a result, the ALJ considered Ms. Stanton's credibility according to the requirements of SSR 96-7p. Therefore, the Court concludes that the ALJ did not commit reversible error when she made her credibility determination.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**.

**SO ORDERED.**

Date: 03/25/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov